IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ALEXIS BOTELLO, § | | |
| Prisoner No. 02212437 § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | | Civil Action No. 4:21-cv-0940-O |
| § | | (Consolidated with No. 4:21-cv-941-O) |
| BOBBY LUMPKIN, § | | |
| DIRECTOR, TDCJ-CID, § | | |
| § | | |
| Respondent. § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Alexis Botello, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice, against Respondent, Bobby Lumpkin, Director of TDCJ. *See* Pet. & Br., ECF Nos. 1, 3. After considering the pleadings and relief sought by Botello, the Court has concluded that the petition should be DENIED.

## BACKGROUND

### A.     Procedural History

Botello was charged in Tarrant County, Texas in Case Number 1376957D, involving one count of capital murder and one count of injury to a child, as well as in Case Number 1376941D, with tampering with evidence with the intent to impair a human corpse, in the death of her eighteen-month-old daughter. *See* TEX. PENAL CODE ANN. §§ 19.03(a)(8), 22.04, 37.09. On August 3, 2018, a jury found her guilty of all three charges and assessed her punishment at life imprisonment, thirty-five years' confinement, and ten years' confinement respectively. *See* Admin. R. 33:150–51, 9:191, ECF No. 17. Botello's convictions were affirmed on direct appeal. *See Botello v. State*, Nos. 02-18-00362-CR, 02-18-00363-CR, 2019 WL 5608243, at *1 (Tex.

1

App.—Fort Worth Oct. 31, 2019, no pet.). Botello did not file a petition for discretionary review. *See* Admin. R. 18, ECF No. 17.

Botello later filed a state petition for writ of habeas corpus, challenging her convictions on the ground that her trial counsel, J. Warren St. John, rendered ineffective assistance at her trial. The Texas Court of Criminal Appeals (TCCA) denied her petition without written order. *See* Admin. R. 22, 28, ECF No. 17.

**B.      Factual Background**

> This case involves the murder of an eighteen-month-old girl, Jane. During the last few weeks of Jane's life, Botello's boyfriend, Joshua Beard, whom Botello and Jane lived with, repeatedly and physically abused Jane until ultimately on July 4, 2014, he stomped her to death. Beard and Botello then buried Jane's body in a shallow grave near Poolville. In a separate trial, a jury convicted Beard of the [felony] murder of Jane, and he is now serving a life sentence. In connection with Jane's death, the State charged Botello with the three offenses she now appeals.

*Botello*, 2019 WL 5608243, at *1.[1]

Botello gave multiple statements to police officers describing the abuse inflicted on Jane that eventually led to her death. *Id*. at *5-8. She explained that between the evening of July 3, 2014, and the morning of July 4, 2014, Beard repeatedly beat Jane, threw her against a wall, and stomped on her. *Id*. at *5. On the morning of July 4, Jane was vomiting and stopped breathing. *Id*. Botello and Beard attempted CPR on Jane, but Botello stated she knew Jane "was gone." *Id*. She also stated that in between the brutal abuse of Jane, Beard would hit and punch her when she tried to intervene. *Id*. Hours after Jane died, Beard and Botello were seen on video surveillance at a Wal-Mart purchasing shovels and gloves, which they used to bury Jane's body under a bridge in a park in a neighboring county. *Id*. at *6.

---

[1] A more detailed factual summary is contained within the Second Court of Appeals memorandum opinion. *See Botello v. State*, Nos. 02-18-00362-CR, 02-18-00363-CR, 2019 WL 5608243, at *1–15 (Tex. App.—Fort Worth Oct. 31, 2019, no pet.). The Court of Appeals changed the child's name to a pseudonym.

**ISSUE**

In her grounds for relief, Botello alleges that "trial counsel was ineffective" for failing to: (1) "consult with and present testimony from a psychologist;" (2) "call a witness to testify to Botello's boyfriend's abusive and controlling behavior;" and (3) "properly preserve h[er] claim that the trial court erroneously excluded defense witnesses." Pet. 6–7, ECF No. 1.

**RULE 5 STATEMENT**

Respondent believes that the petition is timely and is not a successive petition. In addition, Respondent does not believe that Botello's claims are unexhausted or otherwise procedurally barred. *See* Resp't Answer 4, ECF No. 16.

**LEGAL STANDARD**

**A.    28 U.S.C. § 2254**

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). *See* 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts considering the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter*, 562 U.S. 86, 100–01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Id.* at 100 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This means that, if any fairminded

3

jurist could believe that the state court *reasonably*, but not necessarily *correctly*, applied "clearly established Federal law, as determined by the Supreme Court" in rejecting a petitioner's claim, then the petitioner is not entitled to relief. *See Sanchez v. Davis*, 936 F.3d 300, 304–05 (5th Cir. 2019); *see also Richter*, 562 U.S. at 102. Federal habeas relief is not a substitute for ordinary error correction through direct appeal. *Sanchez*, 936 F.3d at 305 (citation omitted). It is a difficult standard to meet because it was meant to be. *Id.*

A state court's factual findings are "presumed to be correct," and an applicant has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Barbee v. Davis*, 728 F. App'x 259, 263 (5th Cir. 2018) (quoting § 2254(e)(2)). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Id*. (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)); *see Pippin v. Dretke*, 434 F.3d 782, 785 (5th Cir. 2005) (citations omitted). Whether a lawyer has rendered ineffective assistance is a mixed question of law and fact. *Sanchez*, 936 F.3d at 304 (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)).[2]

**B.  Ineffective Assistance of Counsel**

To prevail on a claim of constitutionally ineffective assistance of counsel, a petitioner must show (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 687). To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688). A court considering a claim of ineffective assistance must

---

[2] Such mixed questions are reviewed under 28 U.S.C. § 2254(d)(1). *See Clark v. Johnson*, 202 F.3d. 760, 764 (5th Cir. 2000) (citing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).

4

apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

"Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Even under de novo review, the standard for judging counsel's representation is a most deferential one. *Id.* Unlike a later-reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. *Id.* It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690).

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *Id.* The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. *Id.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Id.* Federal habeas courts

must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *Id*. When § 2254(d) applies, the question is not whether counsel's actions were reasonable. *Id*. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id*.

## ANALYSIS

In response to Botello's state habeas petition, trial counsel filed an affidavit in response to her allegations of ineffective assistance of counsel.

**A.     Expert Witness**

Botello's initial claim was that trial counsel St. John was ineffective because he did not consult an expert witness "who could have explained why Botello failed to act" to protect her daughter. ECF No. 1. In his affidavit, St. John stated:

> Ms. Botello elected to testify, which was her right. She had talked with the Police for a total of 8 to 10 hours about what had happened to her daughter at the hands of Mr. Beard. Ms. Botello took Arlington Police to Poolville, where she and Beard buried her daughter. Ms. Botello now complains that a psychologist was not called to trial for her defense. I went over in detail with her, the good and bad things about an expert, and told her that if she was examined by an expert, that the State would then be able to use their expert to impeach her credibility on the stand. Ms. Botello did not want to be examined by an expert. She told the Police, in detail, what happened to her daughter and thought that she would do well in her testimony. I did consult with an expert on her case in a limited fashion, as I have used experts in many cases including psychologists and psychiatrists, when necessary.
>
> The trial strategy for Ms. Botello, which she agreed to, was for her to give full disclosure to the jury of what happened to her daughter, at the hands of Mr. Beard.

Admin. R. 27:236, ECF No. 17.

Considering St. John's affidavit, as well as the reporter and clerk's record from the trial, the habeas court made the following findings of fact:

> 40. In Ground One, Applicant alleges her trial counsel was ineffective for failing to consult with and present testimony from a psychologist at Applicant's trial. *See* Ground One: Application W011888 at 6; Application W011887 at 6.

6

> . . . .
>
> 50. There is no credible evidence that St. John did not consult an expert in preparing for Applicant's trial.
>
> 51. Based on Applicant's decision not to be evaluated by an expert and St. John's trial strategy, it was reasonable for St. John not to present testimony from a psychologist at Applicant's trial.
>
> 52. There is no credible evidence that the result of the proceeding would have been different had St. John called a psychologist to testify at Applicant's trial.

Admin. R. 27:265–66, ECF No. 17. The trial court also made the following conclusions of law:

> . . . .
>
> 21. The record demonstrates that St. John did consult an expert in psychology in reference to Applicant's case.
>
> 22. The record demonstrates that St. John's decision not to further consult an expert in psychology was based on Applicant's wishes and reasonable trial strategy, i.e., to avoid an expert being used by the State to discredit or impeach Applicant. *See* St. John Affidavit at 4.
>
> 23. St. John was better positioned than this court to judge the pragmatism of the Applicant's case. *See State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008).
>
> . . . .
>
> 26. Applicant has failed to prove that St. John failed to consult an expert psychologist in preparing Applicant's case.
>
> 27. Applicant has failed to prove that St. John failed to properly investigate Applicant's case.
>
> 28. Applicant has failed to prove that St. John's decision not to call an expert in psychology was not the result of reasonable trial strategy and his client's wishes.
>
> 29. Applicant has failed to prove that St. John's investigation rendered him ineffective in this case.
>
> 30. Applicant has failed to prove that St. John's trial strategy to avoid calling an expert that could be used to impeach or discredit Applicant's testimony was unreasonable in this case.

> 31. This Court recommends that Applicant's first ground for relief alleging that her trial counsel was ineffective for failing to consult and call an expert in psychology to testify at her trial be **DENIED**.

*Id*. at 274–75, ECF No. 17.

In her petition, Botello states that St. John did not meet with an expert because he did not share details of what was discussed or ask the trial court for money to hire an expert. However, Botello is required to rebut the presumption that the trial court's findings are correct by clear and convincing evidence. *See Barbee*, 728 F'Appx at 263. Her bare assertion that St. John did not consult with an expert once his affidavit stated he did is not enough to overcome the presumption.

Botello also alleges that her expert would have testified that she suffered from battered women's syndrome to explain her inaction in protecting her child. However, St. John argued the defense of duress to the jury. In Texas, duress is an affirmative defense codified in the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 8.05. Duress states:

> (a) It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another.
>
> . . . .
>
> (c) Compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.
>
> (d) The defense provided by this section is unavailable if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion.
>
> (e) It is no defense that a person acted at the command or persuasion of his spouse, unless he acted under compulsion that would establish a defense under this section.

*Id*. Duress requires the mental state of a person of "reasonable firmness." The TCCA stated that it is "obvious that 'a person of reasonable firmness' is not someone who has become more susceptible to coercion because of a traumatic event." *Moreno v. State*, 605 S.W.3d 475, 477 (Tex.

Crim. App. 2020). Botello's proposed expert testimony would have eliminated the affirmative defense of duress that was the trial strategy St. John and Botello devised. Botello's disagreement with the state habeas court's holding notwithstanding, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003). Botello has wholly failed to demonstrate that counsel's tactic, even though it ultimately proved to be unsuccessful, fell outside the realm of reasonable trial strategy. Therefore, it was reasonable for the habeas court to find that St. John was not ineffective in relation to Botello's expert claim.

**B.    Witness Testimony**

In her second claim, Botello alleges that St. John was deficient because he did not call Cameron Risinger as a witness. She claims that Risinger could have "testified to Botello's boyfriend's controlling and abusive behavior, further explaining Botello's failure to stop him." ECF No. 1. St. John addressed the investigation he conducted and his investigator's interaction with Risinger:

> A comprehensive and thorough investigation was conducted in this case for Alexis Botello, regarding the charges she faced. My Investigators and I went to multiple crime scenes, including the house in Arlington where the death occurred, to Poolville where the body was buried, and to the Walmart in Weatherford where Botello and Beard purchased gloves and shovels to burry [sic] the body of the "Child."
>
> All possible witnesses were interviewed in a comprehensive manner to assist in the defense of Ms. Botello. We checked with neighbors in Arlington, after the incident, to see if they had heard any screams or noises coming from the Beard home. Not a single neighbor had heard any cries for help from the Beard home, on July 4, 2014.
>
> My Investigators interviewed many possibly witnesses including Ms. Botello's Mother, Angela Sanchez, along with Alanah Zigelhofer, Cameron Risinger, and Morgan Laye. None of these witnesses, including Ms. Botello's mother, had any knowledge that Beard had been abusive towards Ms. Botello or her child.

9

> More specifically, Cameron Risinger was interviewed in detail by my Investigator regarding his knowledge of Beard and Botello. He was never told of any circumstances surrounding the abuse of the "Child" by Beard. He did indicate that something might have happened between Beard and Botello but it was simply just a hunch and not based on any actual knowledge or observation of anything that was wrong. Mr. Risinger was never told by Botello that Beard was being abusive or harmful to the "Child." Mr. Risinger was not called as a witness because his testimony was not useful. It was simply based on an assumption he had without any actual knowledge.

Admin. R. 27:236–37, ECF No. 17.

The habeas court made the following findings regarding the investigation conducted by St. John and his investigators:

> 53. In Ground Two, Applicant alleges her trial counsel was ineffective for failing to call Cameron Risinger to testify as to Applicant's abusive and controlling relationship with her boyfriend, Joshua Beard. *See* Ground Two: Application W011888 at 8; Application W011887 at 8.
>
> . . . .
>
> 61. Risinger confirmed that a private investigator working for St. John interviewed him prior to Applicant's trial. *See* Applicant's Exhibit 5 at 2.
>
> 62. Risinger was willing to testify at Applicant's trial. *See* Applicant's Exhibit 5 at 2.
>
> . . . .
>
> 69. Risinger presently acknowledges that he does not have actual knowledge of, nor did he ever observe, physical abuse between Beard and Applicant. *See* Applicant's Exhibit 5 at 1 ("I never saw [Beard] physically abuse Alexis").
>
> 70. Risinger presently acknowledges that Applicant never told him that Beard was abuse or harmful to her or her child. *See* Applicant's Exhibit 5 at 1 ("[Applicant] never told me this, and I never saw [Beard] hit [Applicant or her daughter], nor did I see bruises or other marks on [Applicant or her daughter], I believe [Beard] was beating [Applicant and her daughter] when no one was around.").
>
> . . . .

> 72. There is no credible evidence that Risinger provided St. John and his investigator information that would be useful to Applicant's case prior to Applicant's trial.
>
> 73. St. John's decision not to call Risinger to testify at Applicant's trial was reasonable trial strategy.
>
> 74. There is no credible evidence that the result of the proceeding would have been different had St. John called Risinger to testify at Applicant's trial.

Admin. R. 27:266–69, ECF No. 17. The habeas court made the following conclusions of law as well:

> 36. The record demonstrates that Risinger had no actual knowledge of abuse between Applicant and Beard. *See* Applicant's Exhibit 5; St. John Affidavit at 5.
>
> . . . .
>
> 40. Applicant has failed to prove that Risinger's testimony would have been some benefit to the defense.
>
> 41. Applicant has failed to prove that Risinger had personal knowledge of abuse between Beard and Applicant.
>
> 42. Applicant has failed to prove that St. John's decision not to call Risinger to testify at Applicant's trial was unreasonable.
>
> 43. Applicant has failed to prove that St. John was ineffective for failing to call Risinger to testify at her trial.
>
> 44. In light of Risinger's lack of personal knowledge, it is not likely that his testimony would have been admissible under Texas Rule of Evidence 602. *See* TEX. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").
>
> 45. Applicant has failed to prove that St. John engaged in cumulative errors. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1988).
>
> 46. In light of the direct evidence of Beard's abuse against Applicant and Risinger's lack of actual knowledge about the abuse, it is not reasonably probable that Risinger's testimony would have impacted the jury's verdict.
>
> 47. Applicant has failed to prove that had St. John called Risinger to testify at trial, there is a reasonable probability the results of the proceedings would have been.

> 48. This Court recommends that Applicant's second ground for relief alleging that her trial counsel was ineffective for failing to call Risinger to testify at her trial be **DENIED**.

Admin. R. 27:276–77, ECF No. 17.

To prevail on her claim that counsel was ineffective for failure to call a witness, Botello "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *United States v. Osorio Martinez*, 772 Fed. Appx. 164, 165 (5th Cir. 2019) (memorandum opinion) (quoting *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014)). Although Botello named Risinger, showed he was available to testify, and showed what he would have testified about, she failed to show how that testimony would have been favorable to her defense or even that Risinger had first-hand knowledge of the abusive relationship that would have been allowed before the jury. *See id*. Additionally, the Fifth Circuit has found that "counsel prejudices his client's defense when counsel fails to call a witness who is central to establishing the defense's theory-of-the case, and the jury is thereby allowed to draw a negative inference from that witness's absence." *Harrison v. Quarterman*, 496 F.3d 419, 427 (5th Cir. 2007). St. John introduced testimony regarding Beard and Botello's volatile relationship through both Botello and her mother's testimony, so the defense's theory of the case was presented to the jury. Because there is no indication that Risinger had first-hand knowledge of Beard and Botello's relationship or that the jury was aware of his possibility of being a witness, there was no negative inference drawn by the jury from not having Risinger testify. *See id*.

St. John also explained in his affidavit that when his team spoke with Risinger, he provided them with no concrete evidence to assist Botello's defense and, thus, not calling Risinger was part of the trial strategy that St. John and Botello developed. "Complaints based upon uncalled

witnesses" are "not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain." *United States v. Megwa*, No. 20-10877, 2021 WL 3855498, at *3 (5th Cir. June 1, 2021) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). Botello has failed to prove Risinger's testimony would have been beneficial to the defense because it was based on his assumptions and hunches, rather than concrete first-hand knowledge. Botello has also failed to show that St. John's investigation and decision not to use Risinger as a witness was deficient and prejudiced her defense. The habeas court's conclusion is therefore reasonable.

**C.     Habit-of-Abuse Witnesses**

In Botello's third claim, she stated that although St. John "attempted to call two of [Beard's] ex-girlfriends to testify as to his abusive and controlling behavior," he "failed to secure a ruling on his objection, thereby forfeiting the ground for appeal." ECF No. 1. St. John's affidavit explained the strategy he employed during trial in relation to the two women:

> The trial strategy to use the testimony of Madilyn Love and Rachael Jameson was to bolster the testimony of Alexis Botello and to establish a pattern of abuse by Beard towards women. The problem with the habit of abuse towards Love and Jameson was different than Botello. In an interview with both Love and Jameson, they told me they never felt trapped or confined in any way and told me they were free to leave his presence at any time, which was different than what Botello testified to. So, in the end, their testimony might have bolstered Botello's testimony, but unfortunately, it did not meet the definition of [h]abit towards actions of Beard.
>
> The Court remedied my concern of [h]abit because it gave me the Charge I requested as to the necessity of Botello's actions and it allowed me to argue that important issue to the jury.
>
> A thorough review of the trial record clearly establishes a strong trial strategy for Ms. Botello and each witness called by The State of Texas was thoroughly cross-examined. When representing a Client, my goal is always to achieve the best possible result at his or her direction, which is exactly what I did with Ms. Botello's case. All course of conduct was strategically designed to benefit my Client.

Admin. R. 27:237–38, ECF No. 17.

The habeas court made the following findings regarding ground three:

75. In Ground Three, Applicant alleges that her trial counsel was ineffective in failing to properly preserve a claim that the trial court erred by not allowing trial counsel to call two of Applicant's boyfriend's former girlfriends to testify at Applicant's trial. *See* Ground Three: Application W011888 at 10-11; Application W011887 at 10-11.

. . . .

78. At Applicant's trial, St. John argued that Love and Jameson's testimonies were admissible under Texas Rule of Evidence 405(b) as specific instances of conduct that were relevant to Applicant's defense of duress and necessity, as well as Texas Rule of Evidence 406, as evidence of Beard's habit to treat his girlfriends in an abusive, manipulative, and controlling manner. *See* Applicant's Exhibit 2 at 6:145-46.

79. After arguments from St. John and the State on the admissibility of Love and Jameson's testimony, the trial court ruled as follows:

> All right. Mr. St. John, based upon your assertions under 405(b), the court is going to deny their testimony. I think it is basically bolstering. And I think that 405 is, as I read it, we're talking about specific instances of conduct. And I know it says when a person's character or character, but I believe in this respect, we're talking about the accused and not a collateral person, so I'm going to deny that.

*See* Applicant's Exhibit 2 at 6:156.

80. As part of his offer of proof, St. John moved to admit transcripts of Love and Jameson's testimony against Beard at Beard's trial (Defense Exhibits 9 and 10); which the trial court admitted for record purposes. *See* Applicant's Exhibit 2 at 6:158.

81. Additionally, the trial court permitted St. John to make a verbal offer of proof, summarizing what Love and Jameson would testify to:

> They would testify essentially that - - and I'm paraphrasing it so I don't have to read [Defense Exhibits 9 and 10] - - that Josh Beard was abusive to them, controlling, would threaten to kill their family, physically harm them. And Josh Beard impregnated Madilyn Love. And Madilyn Love, by her own choice, decided not to have that baby.

14

> And the more specifically, Rachel Jameson would testify also that she was physically and emotionally abused and controlled by Beard, and she was actually sexually assaulted on several occasions. Which goes to establish the same defensive issues we have I [sic] that Beard threatened to kill my client, my client's family, and he did sexually assault my client. My client did everything she could to stop the death of her child.
>
> Anyway, so those women didn't have that very sad and unfortunate thing where they lost someone in their life, but they both distanced themselves from Beard. And that would be their testimony today in court.

*See* Applicant's Exhibit 2 at RR 6:158-59.

82. St. John further made a bill of exception by objection to the trial court's ruling and stating that his client is harmed by the court's ruling because it prevented him from effectively representing Applicant and raising the issue of duress comprehensively. *See* Applicant's Exhibit 2 at RR 6:159-60.

83. On appeal, Applicant argued that the trial court erred by not allowing her to call Love and Jameson to testify at her trial. Specifically, Applicant argued that "under Rule 406 of the Texas Rules of Evidence, she should have been allowed to call these witnesses to show that Beard had acted in accordance with his habit or routine when he had allegedly abused and controlled Botello." *See Botello v. State*, Nos. 02-18-00362-CR, 02-18-00363-CR, 2019 WL 5608243, at *21 (Tex. App.—Fort Worth Oct. 31, 2019, no pet.).

84. Noting that "[Applicant] received an explicit ruling regarding her Rule 405(b) objection, [but] she did not receive a ruling on her Rule 406 objection[,]" the Second Court of Appeals held that Applicant failed to preserve her Rule 406 complaint for review. *See Botello v. State*, Nos. 02-18-00362-CR, 02-18-00363-CR, 2019 WL 5608243, at *22 (Tex. App.—Fort Worth Oct. 31, 2019, no pet.).

. . . .

90. The trial court's charge to the jury contained instructions on the affirmative defense of duress and the necessity defense. *See* 1376957 CR 178-81 1376941 CR 169-72.

91. St. John argued the issues of duress and necessity in his closing statement to the jury. *See* RR 6:172.

92. St. John argued Beard's habit of abuse in his closing statement to the jury. *See* St. John Affidavit at 6.

Admin. R. 27:263–65, ECF No. 17

> 49. Applicant's trial counsel failed to preserve error regarding the trial court's denial of his request to call Beard's former girlfriends to testify pursuant to Texas Rule of Evidence 406. *See Botello v. State*, Nos. 02-18-00362-CR, 02-18-00363-CR, 2019 WL 5608243, at *21 (Tex. App.—Fort Worth Oct. 31, 2019, no pet.).
>
> 50. Trial counsel's failure to preserve error is not *per se* ineffective assistance; an applicant must still satisfy the prejudice prong of *Strickland*. *See Batiste v. State*, 888 S.W.2d 9, 15 (Tex. Crim. App. 1994) (holding that trial counsel's failure to preserve *Batson* error is subject to the prejudice analysis and is not *per se* ineffective assistance of counsel).
>
> . . . .
>
> 54. The record supports the conclusion that Love and Jameson would not have testified to the same pattern of abuse, control, and manipulation in their relationships with Beard as Applicant had described. *Compare* Applicant's Exhibit 2 at RR 6:158-59 (St. John's offer of proof) *with* Applicant's Exhibit 2 at RR 6:52-68 (Applicant's testimony regarding the abuse).
>
> . . . .
>
> 57. Love and Jameson's testimony was not admissible pursuant to Texas Rule of Evidence 406. *See* Tex. R. Evid. 406; *see also Bishop v. State*, 837 S.W.2d 431, 434-35 (Tex. App—Beaumont 1992)*, aff'd*, 869 S.W.2d 342 (Tex. Crim. App. 1993).
>
> 58. Even if Love and Jameson's testimony were admissible, its exclusion in Applicant's was not reversible error.
>
> . . . .
>
> 61. The exclusion of Love and Jameson's testimony did not prevent Applicant from presenting her duress defense through her own testimony and the testimony of her mother.
>
> 62. The exclusion of Love and Jameson's testimony, if error, was nonconstitutional error. *See Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007).
>
> 63. Nonconstitutional error is not reversible unless it affects an accused['s] substantial rights. *Walters v. State*, 247 S.W.3d 204, 218-19 (Tex. Crim. App. 2007); Tex. R. App. P. 44.2(b).
>
> . . . .

> 67. The record demonstrates that the exclusion of Love and Jameson's testimony did not prevent Applicant from presenting her defensive theory. *See, generally,* Applicant's Exhibit 2.
>
> 68. Though the jury chose to disbelieve that Applicant was acting under duress, the jury was not prevented from considering whether Applicant acted under duress by the exclusion of Love and Jameson's testimony.
>
> . . . .
>
> 71. Applicant has failed to prove that had St. John preserved error regarding the exclusion of Love and Jameson's testimony, there is a reasonable probability the results of her trial proceedings would have been different.
>
> 72. Applicant has failed to prove that had St. John preserved error regarding the exclusion of Love and Jameson's testimony, there is a reasonable probability the results of her appeal would have been different.
>
> 73. Applicant has failed to prove that she was prejudiced by St. John's failure to preserve error regarding the exclusion of Love and Jameson's testimony.
>
> 74. This Court recommends that Applicant's third ground for relief alleging that her trial counsel was ineffective for failing [to] preserve error regarding the trial court not allowing Applicant to call Love and Jameson to testify at Applicant's trial be **DENIED**.

Admin. R. 27:271–75, ECF No. 17.

Botello argues in her reply brief that it was "reasonably likely Texas's Second Court of Appeals would have ordered a new trial" had St. John secured a ruling on his Texas Rule of Evidence 406 objection. *See* ECF No. 18. Instead, the state court of appeals determined that Botello had not preserved error and her issue was not subject to review. *See Botello*, 2019 WL 5608243, at 21. The habeas court found it was not error, but even if it was error to not obtain the ruling, any error was nonconstitutional in nature and would not have led to a reversal. *See* Admin. R. 27:273, ECF. No. 17. The TCCA has determined that the "exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657,

17

665 (Tex. Crim. App. 2002). During trial, although Botello was not allowed to present the testimony of Beard's ex-girlfriends, she was able to present her defense: she was so afraid and controlled by Beard that she could not stop the beating death of her daughter. The jury heard her first-hand account of her and Beard's relationship, as well as testimony from her mother and other witnesses throughout the course of the trial. They also heard how significant the child's injuries were. Botello was allowed to argue the defenses of necessity and duress to the jury. It stands to reason that the jury was aware that Beard was manipulative, controlling, and extremely abusive. The jury chose to reject Botello's self-defense claim and convict her. Botello cannot show that allowing testimony of Beard's abusive habits towards other women in his life through two of his ex-girlfriends would have changed the outcome of her trial or that the habeas court's decision was unreasonable.

### D.     Cumulative Error

Botello finally alleges that due to her trial counsel's "cumulative" errors, she was denied effective assistance. In this case, the evidence against Botello was overwhelming. The state habeas court found that St. John was not ineffective and made significant findings to support its conclusion. In addition, the evidence the jury heard regarding Botello's inaction, participation, and cover-up of her daughter's death was substantial. None of the allegations of ineffective assistance of counsel found in Botello's petition would help to overcome the damaging evidence presented by the prosecution. As discussed above, the Court finds no error with respect to any of Botello's claims, and therefore her cumulative error argument must also fail. *See United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992) ("Because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail.") (emphasis in original); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Twenty times zero equals zero.").

**E.     Summary**

A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Pape v. Thaler*, 645 F.3d 281, 291 (5th Circ. 2011) (quoting *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009)). "We must be highly deferential of counsel's conduct and maintain a strong presumption that counsel's trial strategy fell within the wide range of reasonable professional assistance." *Id*. (citing *Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir. 1992)). Trial counsel explained in his affidavit that the decisions made were based on an agreed trial strategy with Botello.

Nothing in this record suggests that the state habeas ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Mejia*, 906 F.3d at 319 (quoting *Richter*, 562 U.S. at 103)). Thus, there is no reasonable argument that Botello's trial counsel failed to satisfy the *Strickland* standard of effective assistance. *See Richter*, 562 U.S. at 105. Consequently, the state court's decision to deny Botello's ineffective assistance claim was not based on an unreasonable application of *Strickland*, or an unreasonable determination of the facts.

## CONCLUSION

For the reasons discussed, Botello's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. In addition, for the reasons discussed, a certificate of appealability is **DENIED**.

Signed this 11th day of August, 2022.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**